Filing # 42128642 E-Filed 05/31/2016 01:44:07 PM

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

Case No.:
Division:

NILDA ANGELICA SHARP,

       Plaintiff,

vs.

UNIVERSAL HEALTH SERVICES, INC.,
PREMIER BEHAVIORAL SOLUTIONS, INC.,
TBJ BEHAVIORAL CENTER, LLC, all d/b/a
RIVER POINT BEHAVIORAL HEALTH,
HENRY LEPELY, M.D.,
JOHN DOES 1-5, and
JANE DOES 1-5,

       Defendants.

_____/

## COMPLAINT

COMES NOW the Plaintiff, Nilda Angelica Sharp, by and through her undersigned

counsel, files this Complaint and sues Defendants, UNIVERSAL HEALTH SERVICES, INC.,

PREMIER BEHAVIORAL SOLUTIONS, INC., TBJ BEHAVIORAL CENTER, LLC, all doing

business as RIVER POINT BEHAVIORAL HEALTH, HENRY LEPELY, M.D, JOHN DOES

1-5, and JANE DOES 1-5. In further support of this cause of action, Plaintiff would state and

allege as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages in excess of $15,000.00, exclusive of interests,

costs, and attorney's fees.

2.    This is an action to recover damages on behalf of Nilda Angelica Sharp arising

from the Defendants false imprisonment, battery, assault, negligence, intentional infliction of

emotional distress, vicarious liability, deprivation of Constitutional and statutory rights in

violation of 42 U.S.C. § 1983, violation of the Florida Civil Remedies For Criminal Practices Act, Florida Statutes § 772.103, (hereinafter "FCRCPA"), and neglect of a vulnerable adult under Florida Statutes § 415.1111.

3.      The Court has jurisdiction over the subject of, and the parties to this action as the Defendants do or transact business in Duval County, Florida and the events giving rise to the claim arose in Duval County, Florida.

### PARTIES

4.      Plaintiff Nilda Angelica Sharp ("Plaintiff") at all times material was a resident of Duval County, Florida and was a patient of River Point Behavioral Health ("River Point") from on or about January 31, 2016 until February 15, 2016.

5.      Defendant Universal Health Services, Inc. ("UHS") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406. UHS subsidiaries own and operate more than 235 acute care and behavioral health facilities and surgery centers in 37 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands and the United Kingdom.

6.      Defendant Premier Behavioral Solutions, Inc. ("Premier") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406.

7.      Defendant TBJ Behavioral Center, LLC ("TBJ") is a Delaware limited liability company with its principal place of business at 6300 Beach Boulevard, Jacksonville, Duval County, Florida.

8.      Defendant River Point Behavioral Health ("River Point") is a 93-bed residential mental health treatment facility located at 6300 Beach Boulevard, Jacksonville, Duval County, Florida. River Point is a receiving facility designated by the Florida Department of Children and Families pursuant to Florida Statutes § 394.461 (2015).

2

9.      Premier Behavioral Solutions, Inc., TBJ Behavioral Center, LLC, and River Point Behavioral Health are subsidiaries of Universal Health Services, Inc., affiliates of each other and do business as River Point Behavioral Health.  Unless otherwise denoted, these four defendants shall be collectively referred to as "UHS Defendants." Any reference to "Defendants" refers to all defendants in this action.

10.     Defendant Henry Lepely, M.D. (hereinafter "Lepely") was employed by or an agent of Defendant UHS in the capacity of a physician at River Point.

11.     Defendants John Doe 1-5 and Jane Doe 1-5 were employees or agents of Defendant UHS.

## FACTUAL ALLEGATIONS

12.     The Florida Mental Health Act, Florida Statutes §§ 394.451-394.47891 (2015). (hereinafter the "Baker Act") allows that a person may be involuntarily examined for up to 72 hours for persons who have a mental illness, are unable or unwilling to consent to voluntary examination, and, as a result of the mental illness, pose a risk of serious bodily harm to themselves or others in the near future.

13.     Florida Statutes § 394.463(2)(f) provides for an examination period of no more than 72 hours.

14.     Florida Statutes § 394.463(2)(i) states that:

Within the 72-hour examination period . . . one of the following actions must be taken, based on the individual needs of the patient:
1.      The patient shall be released, unless he or she is charged with a crime. . .;
2.      The patient shall be released, subject to the provisions of subparagraph 1., for voluntary outpatient treatment;
3.      The patient, unless he or she is charged with a crime, shall be asked to give express and informed consent to placement as a voluntary patient. . . ; or

3

> 4.    A petition for involuntary placement shall be filed in the circuit court when outpatient or inpatient treatment is deemed necessary.

15.    Universal Health Services, Inc. is one of the largest owners of mental health facilities in the United States.

16.    With few exceptions, Defendant UHS restricts admissions to River Point to people who qualify for reimbursement of their medical costs from private insurance or a government funded healthcare program.

17.    As part of the racketeering activity, the Defendants implemented a scheme of holding patients with healthcare coverage through private insurance or government funded healthcare programs, without medical justification or longer than medically necessary under the guise of the Baker Act. The Defendants implement a systematic census to determine when patients' benefits will expire.

18.    As part of the racketeering activity, the Defendants maintain discharge lists of patients whose insurance have run out and encourages its behavioral health facilities to discharge these patients regardless of their condition.

19.    As part of the racketeering activity, the Defendants discharge patients that they are illegally detaining under the guise of the Baker Act, when the patient obtains legal representation, all to avoid the scrutiny of Florida's state courts.

20.    As part of the racketeering activity, the Defendants target patients that they believe cannot advocate for themselves, lack a familial support system that can advocate for them, or lack self-awareness and the propensity to scrutinize medical providers.

21.    As part of the racketeering activity, the Defendants torment patients to obtain reactions intended to provide justification for Baker Act examination and involuntary placement.

4

22.     As part of the racketeering activity, Defendants inhibit patients from knowing staff members' last names so as to inhibit the investigation of fraud, violence, and maltreatment.

23.     As part of the racketeering activity, the Defendants falsify mental health records to manufacture justification for holding patients pursuant to the Baker Act.

24.     As part of the racketeering activity, the Defendants mislead, intimidate, and/or threaten patients into signing a document "consenting" to voluntary placement.

25.     On January 31, 2016, Plaintiff checked into River Point due to exhaustion and sleep deprivation, in hopes that she would get time to recover.  She even had to persuade the therapist Lindsey that she should be allowed to stay as an inpatient.

26.     Plaintiff instructed the River Point staff during intake that she did not want males to enter her room or to be administered the drug Geodon due to a sexual assault at the facility when Plaintiff was a teenager.

27.     On or about February 3, 2016, Plaintiff decided that it would be best for her to leave River Point due to her insomnia from the patient checks performed every ten minutes throughout the night.

28.     Defendant Lepely told Plaintiff that she could leave but River Point nurses convinced Plaintiff to stay just another day.

29.     On or about February 4, 2016, Plaintiff was advised by Lepely that female inpatient residents told staff members that Plaintiff was hearing voices.

30.     Plaintiff denied the accusations that she had been hearing voices as being absurd.

31.     On or about February 4, 2016, the treatment team voted to keep Plaintiff at River Point based upon the accusations from inpatient residents, that Plaintiff was hearing voices.

32.     At no point during Plaintiff's stay at River Point was she subjected to an examination period pursuant to Florida Statutes § 394.463(2)(f).

Case 3:16-cv-00880-TJC-MCR Document 2 Filed 07/05/16 Page 6 of 21 PageID 39

33.    At no point during Plaintiff's stay at River Point was a petition for involuntary placement of Plaintiff filed.

34.    At no point during Plaintiff's stay at River Point was she a danger to herself or others.

35.    Shortly thereafter, Plaintiff was dragged by two nurses down to the hall where Plaintiff was sexually assaulted ten years prior.

36.    Now assigned to a room with two residents drugged to induce a zombie-like state, Plaintiff kept expressing her desire to leave River Point and to speak with her parents.

37.    In the meantime, Plaintiff's father tried without success to have Plaintiff taken elsewhere.

38.    River Point staff set up a family meeting with Plaintiff's mother, father, and husband with a therapist named "Jessica." When the family arrived to River Point, they were dismayed to learn that there was no one named Jessica there, and there was no meeting scheduled.

39.    On or about February 14, 2016, Plaintiff was in an isolation room with a patient named "Ann" when a staff member named "Edmundo" entered the room and coarsely told Plaintiff to get out and go back to her room.

40.    Upon information and belief John Doe 1 is Edmundo Last Name Unknown, John Doe 2 is First Name Unknown Edwards, and Jane Doe 1 is Teagan Last Name Unknown.

41.    When Plaintiff was back in her room, a mental health technician named "Teagan," a staff member named "Mr. Edwards," and "Edmundo" all entered the room. "Edmundo" instructed Plaintiff to get up, after which he snatched Plaintiff by the left arm, pulled her through the air, and violently slammed her down on the bed, face down. Plaintiff impacted the bed so hard that she saw white light. Upon information and belief, it was Edmundo who then put his

6

massive bulk on Plaintiff's spine, suffocating her, during which Plaintiff in horror and invoking bad memories from her past experience at River Point, felt her pants being pulled down. Fortunately the staff members were not raping Plaintiff but only administering an injection to make Plaintiff lethargic.

42.     Upon information and belief, the drug injected was Haldol (Haloperidol).

43.     After the injection, Plaintiff was dizzy. As a result of being battered, Plaintiff was in excruciating pain. Plaintiff had pain in her neck, back, her left arm, and to the point that her intestines were sore. One of her roommates asked Plaintiff in a melancholy tone "Are you ok?"

44.     Plaintiff was still not permitted to leave or speak with her parents.

45.     Plaintiff was made to sit through group therapy. During the session, the therapist asked Plaintiff "What is wrong?" The only response Plaintiff could muster at this point was "I'm scared."

46.     Plaintiff's injuries continued to manifest and Plaintiff was unable to put full weight on her right leg, her toes were swollen, she could not straighten her left arm, and her fingers swelled around her wedding ring.

47.     One nurse saw Plaintiff and said sarcastically "Who did she piss off."

48.     Inpatient treatment was changed from Lepely to Dr. Edith Hidalgo, M.D. Dr. Hidalgo, realizing the extent of Plaintiff's injuries, ordered that Plaintiff be transported to Memorial Hospital Jacksonville's emergency room.

49.     As part of the racketeering activity, Defendants unlawfully involuntarily confined Plaintiff for the purposes of making and submitting a false or fraudulent claim(s) to Plaintiff's insurer for reimbursement of medically unnecessary services and to obtain payment from Plaintiff.

50.     At the time Plaintiff arrived at River Point, she did not meet the criteria for involuntary placement pursuant to the Baker Act. While involuntarily confined at River Point, Plaintiff was not dangerous to herself or others and the Defendants had no basis upon which to continue Plaintiff's involuntary confinement in River Point.  Plaintiff had not been charged with a crime at any time during her involuntary confinement.  Upon Plaintiff expressing her desire to leave River Point, Plaintiff should have been released.

51.     Through their employment by the UHS Defendants, Defendant Lepely, Defendants John Doe 1-5, and Defendants Jane Doe 1-5 were acting under color of state law, to wit the Baker Act, by involuntarily confining Plaintiff in River Point, a designated Baker Act receiving facility.

52.     Plaintiff was involuntarily confined until she was transported by ambulance to Memorial Hospital Jacksonville on February 15, 2016.

53.     All conditions precedent to this action have occurred or have been waived.

## COUNT I

## FALSE IMPRISONMENT

54.     Plaintiff realleges those allegations contained within paragraphs 1-53 above incorporates them herein by this reference.

55.     Defendants intentionally caused Plaintiff to be restrained against her will.

56.     Defendants acted without legal authority in restraining Plaintiff against her will because Plaintiff did not meet the criteria for involuntary examination under the Baker Act.

57.     Plaintiff's restraint was unreasonable and unwarranted under the circumstances.

58.     Plaintiff suffered mental anguish, humiliation, and loss of income, due to her false imprisonment.

59.     Plaintiff reserves the right to move for leave to amend Count I to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT II

### BATTERY AGAINST JOHN DOE 1, JOHN DOE 2, AND JANE DOE 1

60.     Plaintiff realleges those allegations contained within paragraphs 1-11, 26-35, 39-44, 46-48, and 52-53, and incorporates them herein by this reference.

61.     Defendants John Doe 1, John Doe 2, and Jane Doe 2 intentionally acted individually and in concert to cause harmful and offense contact with Plaintiff's body, to wit, snatching Plaintiff by the left arm, pulling her through the air, violently slamming her down on the bed face down, pinning her down by placing their bodies on Plaintiff while suffocating her, pulling Plaintiff's pants down, and administering an injection that Plaintiff did not consent to be administered.

62.     As a result of contact by Defendants John Doe 1, John Doe 2, and Jane Doe 2 with Plaintiff, she suffered injuries that required emergency hospitalization, specifically injuries to her neck, back, left arm, right leg, toes, and fingers.

63.     Plaintiff suffered mental anguish, humiliation, and loss of income, due to her battery.

64.     Plaintiff reserves the right to move for leave to amend Count II to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT III

### ASSAULT AGAINST JOHN DOE 1, JOHN DOE 2, AND JANE DOE 1

65.     Plaintiff realleges those allegations contained within paragraphs 1-11, 26-35, 39-44, 46-48, and 52-53, and incorporates them herein by this reference.

66.     Defendants John Doe 1, John Doe 2, and Jane Doe 2 intentionally acted individually and in concert to cause harmful and offense contact with Plaintiff's body, to wit, snatching Plaintiff by the left arm, pulling her through the air, violently slamming her down on the bed face down, pinning her down by placing their bodies on Plaintiff while suffocating her, pulling Plaintiff's pants down, and administering an injection that Plaintiff did not consent to be administered.

67.     Defendants John Doe 1, John Doe 2, and Jane Doe 2 created a reasonable apprehension in the Plaintiff of immediate harmful or offensive contact to the Plaintiff's body because Plaintiff was conscious, aware, and could see the perpetration of her battery.

68.     Plaintiff suffered mental anguish and humiliation due to her assault.

69.     Plaintiff reserves the right to move for leave to amend Count III to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish and humiliation; and

(c) granting such other relief as the Court may deem just and proper.

10

**COUNT IV**

**NEGLIGENCE AGAINST JOHN DOE 1, JOHN DOE 2, AND JANE DOE 1**

70.    Plaintiff realleges those allegations contained within paragraphs 1-11, 26-35, 39-44, 46-48, 52-53, 61-63, and 66-68 and incorporates them herein by this reference.

71.    Defendants John Doe 1, John Doe 2, and Jane Doe 2 had a duty to Plaintiff to not cause physical or mental injury.

72.    Defendants John Doe 1, John Doe 2, and Jane Doe 2 breached that duty because they failed to ensure that their actions and contact with Plaintiff did not cause physical or mental injury.

73.    The breach of their duty by Defendants John Doe 1, John Doe 2, and Jane Doe 2 caused the injuries that required emergency hospitalization, specifically injuries to her neck, back, left arm, right leg, toes, and fingers.

74.    The conduct by Defendants John Doe 1, John Doe 2, and Jane Doe 2 was intentional misconduct and a conscious disregard for the physical and mental safety of Plaintiff because they snatched Plaintiff by the left arm, pulled her through the air, violently slammed her down on the bed face down, pinned her down by placing their bodies on Plaintiff while suffocating her, pulled Plaintiff's pants down, and administered an injection that Plaintiff did not consent to be administered.

75.    Plaintiff suffered mental anguish, humiliation, and loss of income, due to her battery.

76.    Plaintiff suffered mental anguish and humiliation due to her assault.

77.    Plaintiff reserves the right to move for leave to amend Count IV to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

11

a.  awarding damages and cost of this action;

b.  awarding damages for mental anguish, humiliation, loss of income; and

c.  granting such other relief as the Court may deem just and proper.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST JOHN DOE 1, JOHN DOE 2, AND JANE DOE 1

78.     Plaintiff realleges those allegations contained within paragraphs 1-11, 26-35, 39-44, 46-48, 52-53, 61-63, and 66-68 and incorporates them herein by this reference.

79.     Defendants John Doe 1, John Doe 2, and Jane Doe 2 intentionally and recklessly snatched Plaintiff by the left arm, pulled her through the air, violently slammed her down on the bed face down, pinned her down by placing their bodies on Plaintiff while suffocating her, pulled Plaintiff's pants down, and administered an injection that Plaintiff did not consent to be administered.

80.     Defendants John Doe 1, John Doe 2, and Jane Doe 2 knew or should have known that their actions would likely result in Plaintiff suffering emotional distress.

81.     The conduct of Defendants John Doe 1, John Doe 2, and Jane Doe 2 was outrageous and is to be regarded as odious and utterly intolerable in a civilized community.

82.     The conduct of Defendants John Doe 1, John Doe 2, and Jane Doe 2 caused Plaintiff to have emotional distress.

83.     Plaintiff's resulting emotional distress was severe.

84.     Plaintiff suffered mental anguish, humiliation, and loss of income, due to her severe emotional distress.

85.     Plaintiff reserves the right to move for leave to amend Count V to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

12

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT VI

### VICARIOUS LIABILITY AGAINST UHS DEFENDANTS

86. Plaintiff realleges those allegations contained within paragraphs 1-11, 26-35, 39-44, 46-48, 52-53, 61-63, 66-68, 71-76, and 79-84 and incorporates them herein by this reference.

87. UHS Defendants employed Lepely, John Doe 1-5, and Jane Doe 1-5 at the time of their negligence.

88. Defendants Lepely, John Doe 1-5, and Jane Doe 1-5 conducted their actions in the ordinary course of business and during their employment for the UHS Defendants.

89. As a result of the UHS Defendants' vicarious negligence, Plaintiff suffered damages to include physical pain, mental anguish, humiliation, and loss of income.

90. All conditions precedent have been performed or have occurred.

91. Plaintiff reserves the right to move for leave to amend Count VI to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT VII

### CLAIM FOR BREACH OF FIDUDIARY DUTY

92.     Plaintiff realleges those allegations contained within paragraphs 1-11, 26-35, 39-44, 46-48, 52-53, 61-63, 66-68, 71-76, and 79-84 and incorporates them herein by this reference.

93.     Plaintiff, as a patient admitted to River Point Behavioral Health, was entirely dependent upon its staff and employees for her care and well-being.  UHS Defendants housed Plaintiff and were responsible for providing all of her daily needs and care.  All Plaintiff's personal needs were under control of UHS Defendants.  As a result of this dependent relationship, a relationship of trust and confidence existed between Plaintiff and UHS Defendants, such that confidence was reposed by Plaintiff and trust was accepted by UHS Defendants.

94.     As a result of such trust and confidence, a fiduciary relationship existed between Plaintiff and UHS Defendants.  That fiduciary relationship placed the obligation on UHS Defendants to ensure Plaintiff's safety in its facility, ensure Plaintiff received necessary medical care following her battery, to ensure that Plaintiff was properly nourished, and ensure that Plaintiff was cared for by properly trained employees.

95.     UHS Defendants breached their fiduciary duty to Plaintiff by:

   a. Failing to ensure that Plaintiff was not battered by UHS Defendants' employees;

   b. Failing to obtain necessary medical care following Plaintiff's battery by UHS Defendants' employees;

   c. Failing to provide nourishment to Plaintiff; and

14

    d.  Failing to properly train its staff and employees to ensure the safety of its

       patients, obtain necessary medical care for its patients, and provide

       nourishment to its patients.

96.     In breaching its fiduciary duty to Plaintiff, UHS Defendants' placed their interests

above that of its patient, the Plaintiff.  by UHS Defendants were more concerned with

minimizing its costs, so as to enhance and maximize its profits, than providing appropriate care

to Plaintiff.

97.     UHS Defendants breach of its fiduciary duty to Plaintiff was the proximate cause

of Plaintiff's damages.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

a.  awarding damages and cost of this action;

b.  awarding damages for mental anguish, humiliation, loss of income; and

c.  granting such other relief as the Court may deem just and proper.

## COUNT VIII

### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

98.     Plaintiff realleges those allegations contained within paragraphs 1-53, 55-58, 61-

63, 66-68, 71-76, and 79-84 above and incorporates them herein by this reference.

99.     42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects any citizen of
the United States or any other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the Constitution
and laws, shall be liable to the party injured in an action at law, suit in equity, or
other proper proceeding for redress . . . .

15

100.   Plaintiff had a clearly established right to liberty, to be free from unreasonable searches and seizures, and to due process.

101.   Defendants deprived Plaintiff of her Constitutional rights to liberty, to be free from unreasonable searches and seizures, and right to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

102.   Plaintiff was not, during the time of her involuntary confinement, dangerous to herself or others and Defendants had no legal basis upon which to continue Plaintiff's involuntary confinement.

103.   Plaintiff had not been charged with a crime at the time of her involuntary confinement, nor at any time during his involuntary confinement.

104.   Plaintiff should have been released upon her own request pursuant to Florida Statutes § 392.463(2)(i)(1) because she did not meet the clinical requirements for involuntary confinement.

105.   Plaintiff suffered mental anguish, humiliation, and loss of income due to her deprivation of liberty, seizure of her person, and due process under the law.

106.   Plaintiff reserves the right to move for leave to amend Count VIII to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income;

(c) awarding punitive damages in the event this action is removed to a district court of the United States;

(d) awarding litigation costs and reasonable attorney's fees pursuant to 42. U.S.C. §1981; and

(e)  granting such other relief as the Court may deem just and proper.

## COUNT IX

## VIOLATION OF THE FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.103, FLORIDA STATUTES

107.    Plaintiff realleges those allegations contained within paragraphs 1-53 and 55-58 above and incorporates them herein by this reference.

108.    As part of the racketeering activity, Defendants with criminal intent held Plaintiff illegally and for the purposes of committing fraud upon Plaintiff and her insurance provider.

109.    As part of the racketeering activity, Defendants with criminal intent participated in the scheme to defraud insurance providers of payments that they were not entitled to, and provided material support to the UHS Defendants so that they would receive money for personal use and to fraudulently maximize stockholder equity.

110.    As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, received proceeds derived, directly and indirectly, from their ongoing scheme to defraud insurance providers of reimbursements, both directly and indirectly, and any part of such proceeds, or the proceeds derived from the investment or use thereof, were used in the establishment or operation of the UHS Defendants' enterprise, all in violation of Florida Statute § 772.103(1).

111.    As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, through their ongoing scheme to defraud insurance providers of reimbursements, acquired or maintained, directly or indirectly, an interest in or control of the UHS Defendants' enterprise, all in violation of Florida Statute § 772.103(2).

17

112.    As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, maintained employment by, or associated with, the UHS Defendants to conduct or participate, directly or indirectly, in the UHS Defendants' ongoing scheme to defraud insurance providers of reimbursements, all in violation of Florida Statute § 772.103(3).

113.    As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute § 812.014, Florida Statute § 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, conspired or endeavored to violate Florida Statute § 772.103(1)-(3) as alleged above, all in violation of Florida Statute § 772.103(4).

114.    Plaintiff suffered mental anguish, humiliation, and loss of income due to her deprivation of liberty, search and seizure, and deprivation of due process under the law while Defendants were violating the Florida Civil Remedies For Criminal Practices Act.

115.    Plaintiff reserves the right to move for leave to amend Count IX to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

(a) awarding treble damages, litigation costs, and reasonable attorney's fees pursuant to Florida Statute § 772.104(1); and

(b) granting such other relief as the Court may deem just and proper.

18

## COUNT X

### STATUTORY CLAIM UNDER FLORIDA STATUTES §415.1111
### NEGLECT OF A VULNERABLE ADULT

116.    Plaintiff realleges those allegations contained within paragraphs 1-53, 61-63, 66-68, 71-76, and 79-84 above and incorporates them herein by reference.

117.    Florida Statutes § 415.1111 provides a civil cause of action to a vulnerable adult who has been abused, neglected, or exploited to recover actual and punitive damages for any deprivation of or infringement on the rights of a vulnerable adult.

118.    Plaintiff was, at all times during her admission to River Point, a "vulnerable adult" as defined in Florida Statutes § 415.102(28). At all relevant times, Plaintiff was unable to perform the normal activities of daily living and to provide for her own care or protection because she was impaired due to a mental or emotional disability or dysfunction.

119.    The following acts and omissions of Defendants constituted "abuse" as defined in Florida Statutes § 415.102(1):

    a.  The false imprisonment by Defendants as alleged in Count I;

    b.  The battery at the hands of Defendants John Doe 1, John Doe 2, and Jane Doe 1 as alleged in Count II;

    c.  The assault at the hands of Defendants John Doe 1, John Doe 2, and Jane Doe 1 as alleged in Count III; and

    d.  The intentional infliction of emotional distress by Defendants John Doe 1, John Doe 2, and Jane Doe 1 as alleged in Count V.

120.    The following acts and omissions of Defendants constituted "neglect" as defined in Florida Statutes § 415.102(16):

19

  a. Failing to ensure that Plaintiff was not injured during contact with Defendants John Doe 1, John Doe 2, and Jane Doe 1.

  b. Failing to immediately obtain necessary medical care following Plaintiff's brutal battery at the hands of Defendants John Doe 1, John Doe 2, and Jane Doe 1;

  c. Failing to provide nourishment to Plaintiff; and

  d. Failing to properly train its staff and employees to ensure the safety of its patients, obtain necessary medical care for its patients, and provide nourishment to its patients.

121. As a direct and proximate result of the foregoing abuse and neglect by Defendants, Plaintiff suffered damages.

122. Plaintiff has retained the services of the undersigned attorney and has agreed to pay a reasonable attorneys fee to prosecute this claim for damages. Florida Statutes § 415.1111, entitles Plaintiff to an award of attorney's fees and costs incurred in prosecuting a civil action for neglect and/or abuse of a vulnerable adult.

123. Plaintiff reserves the right to move for leave to amend Count X to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Nilda Angelica Sharp prays for judgment:

  a. awarding damages, litigation costs, and reasonable attorney's fees pursuant to Florida Statute § 415.1111; and

  b. granting such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**THOELE DRACH**

BY:

Justin Seth Drach, Esq.
Florida Bar No. 103016
Email: justindrach@drachlaw.com
**Amanda Marie Thoele, Esq.**
Florida Bar No. 75118
Email: amandathoele@drachlaw.com
Justin Seth Drach, P.A.
5262 Commissioners Drive
Jacksonville, FL 32224
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Attorneys for Plaintiff*